**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WILLIAM A. MORGAN,

    Plaintiff,

       v.

COVINGTON TOWNSHIP, et al.,

    Defendants.

NO. 3:07-cv-1972

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is the Motion for Summary Judgment of Defendants Covington Township, Bernard Klocko, and Thomas Yerke. (Doc. 22.) Defendants move for summary judgment on Plaintiff William A. Morgan's claims brought under 42 U.S.C. § 1983.[1] For the reasons stated below, the Court will grant in part and deny in part Defendants' motion. The Court will grant the motion as to Plaintiff's claims for violation of his procedural due process rights and his claims for Covington Township's failure to train its employees and/or agents. The Court will deny the motion as to Plaintiff's First Amendment retaliation claim. This Court has jurisdiction over Plaintiff's § 1983 claims pursuant to 28 U.S.C. § 1331 ("federal question jurisdiction").

---

[1]    In each Count of Plaintiff's complaint, he claims to seek all remedies available under § 1983 and the Pennsylvania Constitution. It is not clear whether he brings separate claims under the federal and state constitutions as to each Count. However, Defendants' motion addresses Plaintiff's claims only insofar as they raise claims under § 1983. The Court therefore address only federal claims in this Memorandum.

**BACKGROUND**

I.     **Factual Background**

Plaintiff's claims derive from the events surrounding his suspension and termination from Covington Township's ("the Township") police department.  Plaintiff began working for the Township police department in May 2002 as a part time police officer.  (Defs.' Statement of Material Facts ¶ 1, Doc. 24) (hereinafter "Defs.' Statement").  He was made a full time officer in 2005.  (Defs.' App. to Mot. for Summ. J., Ex. 6 at 145, Doc. 23. (hereinafter "Defs.' App."); Morgan Dep. 6:18-19, Doc. 28.)

On July 19, 2007, an incident occurred that precipitated Plaintiff's suspension from the police force.  Plaintiff's ex-girlfriend, Jill Mailen, approached the gatehouse of the Eagle Lake residential community and got into a verbal altercation with a security employee named Carla Sodano.  (Defs.' App., Ex. 6 at 311; Morgan Dep. 79:2-12.)  Mailen, possibly believing Sodano to be another security employee named Jamie Villani, accused her of having sexual relations with Plaintiff.[2]  (Defs.' App., Ex. 6 at 305, 311.)  Villani was living with Plaintiff at the time. (Morgan Dep. 78:5-22.)  Covington Township police officer Scott Gaughan was notified of the incident and made aware that Sodano wished to press charges against Mailen. (Defs.' App., Ex. 6 at 311, 314.)  Sergeant Bernard Klocko, as superior officer, directed Gaughan to handle the case and file charges.  (*Id*. at 314.)  Gaughan charged Mailen and she was issued a citation.  (Morgan Dep. 80:6-23.)

_____

[2]     While Sodano gave a statement to police to this effect, Mailen asserted in deposition testimony that she knew Sodano was not Villani.  (Mailen Dep. 44-45, Doc. 28.)  She confirmed the two had a verbal altercation, but testified she did not remember what she yelled at Sodano.  (*Id*. at 44:9-13.)

2

After learning of the incident, Plaintiff approached Eagle Lake Chief of Security, Jeff Osborne, who he was on friendly terms with, and asked him if he there was anything he could do about the citation. (*Id*. at 80-81.) Osborne states that Plaintiff asked if he would talk to Sodano about dropping the charges. (Defs.' App., Ex. 6 at 315.) Osborne told Plaintiff that if he could persuade Mailen to apologize, Sodano would drop the charges. (*Id.*; Morgan Dep. 88:18-25.) Plaintiff was hesitant for anyone to discuss this possibility with Mailen, fearing she would blame him for the incident and retaliate. (Defs.' App., Ex. 6 at 315; Morgan Dep. 89:9-17.) Osborne states he then told Plaintiff his hands were tied on matter and he could not tell Sodano what to do. (Defs.' App., Ex. 6 at 315.) Plaintiff, on the other hand, asserts Osborne offered to talk to Sodano. (Morgan Dep. 91:10-25.)

Officer Gaughan states that a few days after the Eagle Lake incident, he had a conversation with Plaintiff in which the latter advised him that he was taking care of the situation and that Osborne was going to talk with Sodano to have the charges dropped. (Defs.' App., Ex. 6 at 314.) Plaintiff denies this conversation took place. (Morgan Dep. 86-87.) According to Sergeant Klocko, he asked Gaughan about the status of the case on July 24, 2007, and was informed that Plaintiff had told Gaughan the charges were dropped and the situation settled. (Defs.' App., Ex. 6 at 319.) Sergeant Klocko states he then spoke with Sodano and learned that the charges were not dropped. (*Id*.) August 9, 2007, in response to Plaintiff's actions surrounding the Eagle Lake incident, Sergeant  Klocko composed a memorandum directed to Plaintiff, informing him that he would recommend disciplinary action be taken. (*Id*. at 318-21.) Plaintiff asserts he never received this memorandum, although he acknowledges having a meeting with Sergeant Klocko in which the latter said Plaintiff was injecting himself into an investigation. (Morgan Dep. 82:13-20, 118-119.)

3

On or around August 8, 2007, Plaintiff entered the apartment he had shared with Villani (it is not clear whether they continued to live together at this point), removed some of his belongings, and left the door open upon exiting.  (Defs.' App., Ex. 6 at 313.)  Arriving home that night, Villani was upset and frightened to discover the open door.  (*Id.*)  According to Sergeant Klocko, Villani called him the same night to report the incident.  (Pl.'s Br. in Opp'n, Ex. B, Doc. 28.)

On August 16, Sergeant Klocko sent a letter to the Township Board of Supervisors ("the Board") filing charges against Plaintiff and requesting he be suspended without pay and terminated.  (*Id.*)  He gave the facts of the Eagle Lake incident and also recounted the incident at Villani's apartment.  (*Id.*)  He stated that these incidents reflected the "culmination of inefficient performance of duties" by Plaintiff over the previous three years.  (*Id.*)  Sergeant Klocko made the following charges:

a.      violation of law – by inserting himself into the situation with the Eagle Lake Security Force, Officer Morgan committed the offense of official oppression, intimidation of witnesses or victims and/or retaliation against witnesses, victim, or party

b.      conduct unbecoming an officer – by entering into the residence of Jamie Villani and removing items, without notice, and leaving the residence unsecured, his actions clearly showed conduct unbecoming an officer

c.      inefficiency – the numerous written warnings and admonishments given to Officer Morgan over the past three years detail his inefficiency, in that he has consistently failed to complete reports required of this position

d.      neglect of official duty – the written warnings and admonishments given to Officer Morgan show that he has consistently neglected to take the basic actions needed to perform his duties as a police officer, to include such simple but needed tasks of keeping his area and his vehicle clean and orderly

e.      disobedience of orders – in spite of numerous warnings, Officer Morgan

4

> has failed to take action to improve his performance showing disrespect
> for the chain of command and a willful refusal to change his behavior

(*Id*.)

On August 17, 2007, the Board sent Plaintiff a letter enclosing a copy of Sergeant Klocko's August 16 letter and informing him that, based on the charges, he was suspended indefinitely with pay, effective the same day. (*Id*. at Ex. C.) The letter also informed him that his termination had been recommended; he needed to contact the Township Solicitor to go over the charges; he had a right to respond to the charges in writing and/or to request a public hearing; and he had a right to be represented by counsel. (*Id*.) Plaintiff, through counsel, requested a public hearing by letter dated August 22, 2007. (*Id*. at Ex. D.)

On August 24, 2007, Plaintiff received a second letter from the Board. (*Id*. at Ex. E.) Enclosed with the letter were four statements taken in connection with Plaintiff's involvement in the Eagle Lake incident. (*Id*.) Plaintiff was informed that the statements were being turned over to the Pennsylvania State Police for investigation. (*Id*.) The letter stated that because the matter was being referred for investigation, Plaintiff's status was changed to administrative leave with pay, effective August 17, 2007, until the investigation was complete. (*Id*.) It further stated that the Board's previous letter of August 17 was rescinded and no hearing would be held. (*Id*.)

Though witness statements were forwarded to the state police, they refused to conduct an investigation. (Defs.' App., Ex. 6 at 324.) The matter was then referred for investigation to the Lackawanna County District Attorney, which determined that Plaintiff's actions did not rise to the level of criminal activity. (*Id*. at 324, 327.)

It appears that after this determination, the Board dismissed the charges against

5

Plaintiff for violation of the law.  (*Id*. at 305.)  On September 21, 2007, Sergeant Klocko requested that the Board reevaluate the charges as a violation of departmental policy and neglect of official duty.  (*Id*.)  Additionally, he brought new charges of neglect of official duty and conduct unbecoming an officer based on unrelated events that had come to his attention since his previous filing.[3]  (*Id*. at 324.)

Based on the new charges, the Board sent Plaintiff a letter on September 28, 2007, informing him of the dismissal of the violation of law charges; of the new charges; that he needed to contact the Township Solicitor to go over the charges; he had a right to respond in writing and/or request a public hearing; and he had a right to be represented by counsel. (*Id*.)  Copies of Sergeant Klocko's charges were enclosed.  (*Id*.)  Additionally, Plaintiff was continued on administrative leave with pay pending the Board's decision.  (*Id*.)

A public hearing was scheduled for October 5, 2007, then rescheduled for November 5, 2007.  (Defs.' Statement ¶¶ 77, 78.)  Testimony was taken at the November 5 hearing, which was then continued until  January 15, 2008.  (*Id*. ¶¶ 79, 80.)  Plaintiff was not present at either hearing, but was represented there by his counsel.  (*Id*. ¶¶ 79, 80, 82.)  At the close of the January 15, 2008 hearing, the Board voted to terminate Plaintiff.  (*Id*. ¶ 81.)

## II.    Procedural Background

Plaintiff filed a complaint against the Township, Sergeant Klocko, and Chairman of the Board Thomas Yerke on October 27, 2007, alleging three Counts.  (Doc. 1.)  Count I alleges violation of his right to procedural due process based on harm to his reputation as

---

[3]     These events involved complaints by a victim in a criminal case investigated by Plaintiff alleging that Plaintiff caused her case to be dismissed by lying to her about the date of her court appearance.  (*Id*. at 329-330.)

well as Defendants' failure to provide him an opportunity to be heard prior to his initial August 17, 2007 suspension.  Count II alleges retaliation for Plaintiff's exercise of his right to petition the government for redress.  Count III alleges that the Township failed to adequately train its employees and/or agents, resulting in constitutional injury to Plaintiff.

Defendants filed an answer to the complaint on December 21, 2007. (Doc. 11.) After completion of discovery, Defendants filed the present motion for summary judgment on November 24, 2008.  (Doc. 22.)  This motion has been fully briefed and is ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *Id*.  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of

proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

Defendants move for summary judgment on all of Plaintiff's § 1983[4] claims.  The

---

[4]        42 U.S.C. § 1983 provides:

Court will address each claim in turn.

### I.   Due Process Claims

Plaintiff brings two § 1983 claims for violation of his right to procedural due process under the Fourteenth Amendment to the U.S. Constitution.  The Fourteenth Amendment protects a person against government deprivation of life, liberty, or property without due process of law.  Plaintiff alleges deprivations of both a property and a liberty interest.

### A.   Property Interest

The focus of Plaintiff's first due process claim is his August 17, 2007 suspension for an indefinite period of time.  He asserts a property interest in remaining free from such suspension and argues that he was entitled to some opportunity to be heard prior its taking effect.

### 1.   Existence of Property Interest

The Court must determine whether Plaintiff had a valid property interest before asking whether he was afforded due process in its deprivation.  "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 540 (1985) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  Plaintiff correctly asserts that the Police Tenure Act, 53 P.S. § 811 *et seq.*, creates a property interest under Pennsylvania state law in this case.  The Act provides that

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage of any State ... subjects, or causes to
> be subjected, any citizen of the United States ... to the deprivation
> of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law, suit
> in equity, or other proper proceeding for redress....

a full time police officer may not be may not be suspended, removed, or reduced in rank except for cause.[5]  "The hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'"  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982).  As there no dispute that Plaintiff was a full time police officer[6] when suspended, he has a property interest created by state law in remaining free from suspension.  *See also Guarnieri v. Duryea Borough*, No. 05-cv-1422, 2007 U.S. Dist. LEXIS 84580 (M.D. Pa. Nov. 15, 2007) (Caputo, J.) (Police Tenure Act creates property right); *Kavakich v. Bentleyville Borough*, No. 06-cv-48364, 2008 U.S. Dist. LEXIS 48364 (W.D. Pa. June 23, 2008) (same).

Defendants argue in their reply brief that Plaintiff cannot claim a property interest based on the Police Tenure Act in this case because the Township complied with the procedural requirements in the Act itself.  The U.S. Supreme Court specifically rejected this

---

[5] Section 812 of the Act provides:

> No person employed as a regular full time police officer in any police department of any township of the second class, or any borough or township of the first class within the scope of this act, with the exception of policemen appointed for a probationary period of one year or less, shall be suspended, removed or reduced in rank except for the following reasons: (1) physical or mental disability affecting his ability to continue in service, in which case the person shall receive an honorable discharge from service; (2) neglect or violation of any official duty; (3) violation of any law which provides that such violation constitutes a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; (5) intoxication while on duty....

[6] The Police Tenure Act applies to a police force of less than three full time officers.  The record does not confirm how many full time officers are on Covington Township's police force.  However, Pennsylvania state law provides the same protections to forces of three or more full time officers. 53 P.S. §§ 46171, 46190.

10

argument in *Loudermill,* 470 U.S. at 540-541.  The *Loudermill* court held that state law provides only the substance of a property interest, not the procedure required for its deprivation.  *Id*. at 541 ("[O]nce it is determined that the Due Process Clause applies, the question remains what process is due ... The answer to that question is not to be found in [state law].") (internal quotations omitted).

2.    *Required Procedure*

Having determined Plaintiff had a valid property interest, the Court must determine what process was due.  Plaintiff does not dispute the adequacy of the two post-deprivation hearings he received, nor does he argue that he was not provided notice of the charges against him, but asserts that he was entitled to a pre-deprivation opportunity to be heard.  Defendant does not dispute that Plaintiff received no opportunity to be heard prior to his August 17, 2007 placement on suspension, but argues that he nonetheless received the process due him under the Fourteenth Amendment.

As the Third Circuit Court of Appeals has noted, "[t]here is no rote formula for sufficient protections under the Due Process Clause."  *Wilson v. MVM, Inc.*, 475 F.3d 166, 178 (3d Cir. 2007).  Rather, courts utilize the factors set forth by the U.S. Supreme Court in *Matthews v. Eldridge*, 424 U.S. 319 (1976), to engage in a case-by-case inquiry.  The *Wilson* court articulated the inquiry as follows:

> At a minimum, due process requires notice and a hearing ... However, when that notice and hearing must be provided and how intensive the hearing must be is a determination that depends on the balancing of three interests: (1) the private interest at stake, (2) the risk of error in the procedure used compared with the degree of improved accuracy that additional procedures would provide, and (3) the government's interest.

11

*Wilson*, 475 F.3d at 178 (citing *Matthews*, 424 U.S. at 334-35).

Weighing the *Matthews* factors, the U.S. Supreme Court in *Loudermill,* 470 U.S. at 546, held that, prior to termination, "the tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."   In a later case, the Court indicated that an employment action short of termination does not invariably require pre-deprivation process. *Gilbert v. Homar*, 520 U.S. 924 (1997).   There, the Court weighed the *Matthews* factors and determined that a temporary suspension without pay required no pre-deprivation opportunity to be heard where the employee was charged with a felony and received a prompt post-suspension hearing.   *Id*. at 934.

In a recent case, the Third Circuit Court of Appeals addressed the issue of pre-deprivation process where a municipal firefighter was temporarily suspended with pay without notice or an opportunity to be heard.   *Dee v. Borough of Dunmore*, 549 F.3d 225 (3d Cir. 2008).   Without deciding the whether pre-deprivation notice and hearing were required, the *Dee* court gave guidance on the *Matthews* analysis:

> When an individual is not provided with any form of pre-deprivation process, as in this case, the risk of an erroneous deprivation of his constitutionally protected interest--i.e., the second factor of the *Mathews* balancing--is heightened considerably.   As the Supreme Court has made clear, "[w]hen protected interests are implicated, the right to some kind of prior hearing is paramount." *Roth*, 408 U.S. at 569-70 .... Only in "'extraordinary situations where some valid government interest is at stake'" is it permissible to postpone the hearing until after the deprivation has already occurred. *Roth*, 408 U.S. at 570 n.7 (quoting [*Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)]).

*Id*. at 232-33.

The U.S. Supreme Court has provided guidance on the limited circumstances in which it is permissible to postpone a person's opportunity to be heard until after a deprivation has taken place.  In *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 241 (U.S. 1988), the Court held that "[a]n important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation."  In *Mallen*, plaintiff was suspended from his post as president and director of a federally insured bank by the Federal Deposit Insurance Corporation (FDIC) after being indicted for a felony. *Id*. at 236-37.  The Court found present an important government interest in protecting depositor interests and maintaining public confidence in banking institutions.  *Id*. at 240-41. It found "substantial assurance" that the deprivation was not baseless or unwarranted where a grand jury had indicted plaintiff, finding probable cause to believe he had committed a felony.  *Id*. at 241.  Based on these facts, the Court concluded that a lack of pre-deprivation opportunity to be heard did not offend the Due Process Clause.

In *Barry v. Barchi*, 443 U.S. 55, 59-61 (1979), the Court held that a pre-deprivation opportunity to be heard was not constitutionally required where a horse trainer's license was temporarily suspended by the state after it was discovered that his horse was drugged before a harness race.  The Court found that the state had an important interest in the integrity of the racing industry.  *Id*. at 64.  It found substantial assurance that the deprivation was not baseless existed where the state relied on the allegation of a testing official who had examined the horse pursuant to prescribed procedures.  *Id*. at 65.

With the above principles in mind, this Court must weigh the *Matthews* factors in the

13

case at bar.   First, Plaintiff's private interest in an opportunity to be heard prior to his suspension, though not extremely weighty, is not insignificant.   While he suffered little financial loss from a suspension with pay,[7] he did not receive an opportunity to respond to the charges against him for over a month.   The letter he received August 17, 2007 from the Township invited him to respond in writing, request a hearing, and to meet with the Township Solicitor to go over the charges against him.   (Pl.'s Br. in Opp'n, Ex. C.)   However, that letter was rescinded by the subsequent letter of August 24, 2007.   (*Id.* at Ex. E.)   He was not offered another opportunity to respond until receiving the September 28, 2007 letter from the Township, again inviting him to respond in writing, request a hearing, and to meet with the Township Solicitor.   (Defs.' App., Ex. 6 at 324-25.)   Thus, while he was not significantly disadvantaged financially, he was not given an opportunity to relate his "side of the story" until weeks after his initial suspension.

On the other side of the balance weighs the Township's interest in responding promptly to allegations of improper conduct to protect the integrity of its police force. Sergeant Klocko charged Plaintiff with violating the law and conduct unbecoming an officer in connection with the Eagle Lake incident.   (Pl.'s Br. in Opp'n, Ex. B.)   Plaintiff was charged

---

[7]      There appears to be some confusion as to whether he continued to receive fringe benefits in the period between his initial suspension and his termination.   Defendants provide documentation that Plaintiff continued to receive health, dental, and life insurance until February 1, 2008.   (Defs.' App., Exs. 3, 4, 5.)   Plaintiff indicated in deposition testimony that he did not receive health care benefits during his suspension period, but then testified that he did not discover their loss until he attempted to visit the doctor after his termination.   (Morgan Dep. 130-35.)   Plaintiff states that he also lost the benefit of vacation, overtime, and personal time pay during this period.   (Pl.'s Answer to Statement of Facts ¶ 83, Doc. 29.)

14

with improperly interjecting himself into an investigation involving people he knew for personal reasons.  The Township's interest taking action to protect public confidence in the police force is at least as pressing as the government interests deemed important in both *Mallen* and *Barry*.

As the *Dee* court counseled, the second *Matthews* factor—the risk of erroneous deprivation—is heightened considerably where, as here, a plaintiff is afforded no pre-deprivation opportunity to be heard.  However, as *Mallen* indicates, in circumstances calling for prompt action, foregoing pre-suspension process may be justified where there exists a "substantial assurance that the deprivation is not baseless or unwarranted" to mitigate the risk of erroneous deprivation.  *See also Gilbert v. Homar*, 520 U.S. 924, 933 (1997) (discussing *Mallen* in relation to second *Matthews* factor).  Here, the charges stemming from Plaintiff's actions during the Eagle Lake incident warranted prompt action by the Township to protect its interest in the integrity of its police force.  In his letter filing charges, Sergeant Klocko explained the facts of the incident and Plaintiff's involvement.  (Pl.'s Br. in Opp'n, Ex. B.)  Sergeant Klocko's account was based on the statements of the parties involved in the incident, including Carla Sodano, Jamie Villani, Scott Gaughan, and Jeff Osborne.  (Defs.' App., Ex. 6 at 311-15.)  While Plaintiff contested or attempted to explain several of these statements in his deposition (Morgan Dep. 71-92), they nonetheless provide adequate assurance that the charges submitted to the Board were not "baseless or unwarranted."

Looking at the *Matthews* factors together, the Court finds that Defendants did not violate Plaintiff's right to procedural due process in failing to provide him an pre-suspension opportunity to be heard.  His private interest in having the opportunity to tell his side of the

story before being placed on suspension is outweighed by the governmental interest in prompt action to protect the integrity of the police force.  While there is an inherent risk of erroneous deprivation in all circumstances providing no pre-deprivation opportunity to be heard, there existed substantial assurance that the charges on which the suspension was based were not baseless or unwarranted.  The Court will therefore grant the motion for summary judgment on this claim.

    B.    <u>Liberty Interest</u>

In his second procedural due process claim, Plaintiff asserts Defendants deprived him of a liberty interest in his reputation by publically accusing him of committing a crime.

The U.S. Supreme Court has held that a person has a protectable liberty interest in his or her reputation. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.").  "Courts have subsequently clarified, however, that 'reputation alone is not an interest protected by the Due Process Clause.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. Pa. 2006) (quoting *Versarge v. Twp. of Clinton, New Jersey*, 984 F.2d 1359, 1371 (3d Cir. 1993)). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest ... We have referred to this as the 'stigma-plus' test." *Id*.

The Third Circuit Court of Appeals has held that a plaintiff satisfies the "plus" element of the test where he has a constitutionally protected property interest. *Dee*, 549 F.3d at 234. As the Court has already determined that Plaintiff has a property interest created by state

law in remaining free from suspension, he satisfies the "plus" element here.

To satisfy the "stigma" prong of the test, Plaintiff must show "that the purportedly stigmatizing statement(s) (1) were made publicly ... and (2) were false." *Hill*, 455 F.3d at 236. Defendants argue that Plaintiff has presented no facts showing that any stigmatizing statements were made publically. Plaintiff asserts that the allegedly criminal conduct and suspension were publicly disclosed to the Constable who served on him notice of his suspension, the Township Secretary, the district attorney's office, the state police, and to the public in his hearing. Plaintiff's argument, however, attempts to expand the scope of the allegations in his complaint. Count I of the complaint asserts that the Plaintiff's reputation was injured as a result of being publicly accused of committing a crime, not by his being placed on suspension. (Compl. Count I.) However, none of the evidence Plaintiff points to in the record shows a public statement in which he is accused of a crime by any of the Defendants.[8] As to the Constable and Secretary, he shows only that they were aware he was suspended based on a sealed envelope reading "Notice of Suspension" served on Plaintiff. (Morgan Dep. 197-98.) As to statements in connection with his public hearing, Plaintiff points only to a public notice advertising that a "hearing will be held to consider charges that have been filed against William Morgan in the performance of his duties as a

---

[8]     The Court notes that the U.S. Supreme Court and Third Circuit Court of Appeals have not addressed whether "public" in the context of a procedural due process claim requires more than a common law defamation claim, in which publication generally requires disclosure to only a single third party. *See McCleester v. Mackel*, No. 06-cv-120, 2008 U.S. Dist. LEXIS 27505, at *79 (W.D. Pa. March 27, 2008). Because I find that the Plaintiff does not demonstrate a disclosure to any third party, I do not address this issue.

police officer in Covington Township." (Defs.' App., Ex. 6 at 424.)  In neither case does the asserted statement accuse Plaintiff of a crime.  As to the district attorney's office and state police, Plaintiff demonstrates only that Defendants forwarded them witness statements taken in conjunction with the Eagle Lake incident for investigation and evaluation as to whether Plaintiff's actions constituted criminal conduct.  (Pl.'s Br. in Opp'n, Ex. E; Jordan Dep. 7-10, Doc. 28.)  Plaintiff does not show that any Defendant made a statement to either office accusing him of a crime.  Based on this evidence, the Court agrees with Defendant that Plaintiff does not establish Defendants publicly made stigmatizing statements about him.  Because he therefore cannot establish the stigma prong of the "stigma plus" test, the Court will grant summary judgment on this claim.

## II.    First Amendment Retaliation

Plaintiff brings a claim for First Amendment retaliation, asserting in his complaint that the Township retaliated after he requested a hearing regarding his suspension by referring him for criminal investigation to the Pennsylvania State Police and Lackawanna County District Attorney's Office.  He styles his claim as invoking the protection of the Petition Clause of the First Amendment.[9]

To establish a First Amendment retaliation claim based upon the right to petition by a public employee, the Court must employ a three-part inquiry.  First, the Plaintiff has the burden of establishing that the activity is protected by the First Amendment.  *San Filippo v.*

---

[9]     The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. CONST. amend. I.

18

*Bongiovanni*, 30 F.3d 424, 430-31 & n.7 (3d Cir. 1994), *cert. denied*, 513 U.S. 1082 (1995).

Second, the Plaintiff must establish that the protected activity was a substantial factor in the

alleged retaliation. *Id.* In order to constitute retaliation within the meaning of the second

prong, the action must be sufficient to deter a person of ordinary firmness from exercising

his First Amendment rights. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir.

2006).

If Plaintiff satisfies the first two prongs of the inquiry, the burden of persuasion shifts

to the defendant, who "may defeat plaintiff's claim by demonstrating that the same action

would have taken place even in the absence of the protected conduct." *San Filippo*, 30 F.3d

at 430-31 & n.7. This framework is borrowed from *Mt. Healthy City School District Board of

Education v. Doyle*, in which the defendant must demonstrate the third prong by a

preponderance of the evidence. *See* 429 U.S. 274, 287 (1977).

A.    Protected Activity

The Third Circuit Court of Appeals has held that lawsuits and grievances directed at

a government employer or public officials which invoke the formal mechanism for the redress

of grievances are protected petitions under the First Amendment, even where they only

address matters of private concern. *San Filippo,* 30 F.3d at 439-40. Such a petition is

protected as long as it is filed in good faith and is not a sham. *Id*. at 439. Lawsuits,

grievances made pursuant to a collective bargaining agreement, and workers compensation

claims are recognized examples of petitioning activity invoking formal mechanisms of

redress. *Id*. at 439 n. 18.

Defendants argue that Plaintiff fails to demonstrate protected petitioning activity

19

because he has not shown that he engaged a "formal mechanism" of redress such as a lawsuit or grievance. Plaintiff argues in response that he, through his counsel, requested a public hearing to address events and allegations surrounding his suspension. He presents the August 17, 2007 letter from the Township informing him of his immediate indefinite suspension, the charges against him, and of his "right to a public hearing on these charges by making a demand for a hearing to the Board of Supervisors." (Doc. 28, Ex. C.) He also presents a letter from his counsel to the Township Solicitor dated August 22, 2007 in which he requests such a hearing.[10] (Doc. 28, Ex. D.) This request, Plaintiff argues, constitutes a protected "petition."

The Court agrees with Plaintiff. He was offered and invoked a formal and public process in which he would appear before the Board to present evidence refuting the basis for his suspension. Indeed, the Township's letter informed him of the right to be represented by counsel at the hearing. (Pl.'s Br. in Opp'n, Ex. C.) This situation is more akin to the recognized examples of protected activity named above and stands in contrast to the facts presented in *Foraker v. Chaffinch*, 501 F.3d 231, 237 (3d Cir. 2007), in which the Third Circuit Court of Appeals held that plaintiff did not petition within the meaning of the Constitution. In *Foraker*, police officers working as instructors at a police firing range "complain[ed] up the chain of command" regarding problems at the range. *Id*. They sent e-mails to superiors and met with police personnel to notify their employer of the problems.

---

[10]     The  August 24, 2007 letter in which the Township purported to rescind the August 17 letter and right to a hearing offered therein based on the matter being does not undermine his request for a hearing made on August 22, before the right was rescinded.

*Id.* at 234-35.  The court reasoned that this conduct was not petitioning activity because plaintiffs complained internally, through informal channels; "they did not petition a state agency qua agency," but rather appealed to their employer, which also happened to be a state agency.  *Id.* at 237.  Here, Plaintiff requested access to a formal process in front of a municipal body separate from his employer, a department of the Township.  As there is no indication that the request was a sham or made in bad faith, the Court concludes that he demonstrates protected activity under the Petition Clause.

### B.   Ordinary Firmness & Substantial Factor

The second element considers whether the alleged retaliatory actions were sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.  *Thomas,* 463 F.3d at 296.  "The effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable, but it must be more than *de minimus*."  *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotation marks omitted).  However, "[e]ven 'an act of retaliation as trivial as failing to hold a birthday party for a public employee,' if 'intended to punish her for exercising her free speech rights,' may be actionable if sufficient 'to deter a person of ordinary firmness' from exercising his or her First Amendment rights." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3d Cir. 2000) (citing *Rutan v. Republican Party*, 497 U.S. 62, 76 n.8 (1990)).  The Third Circuit Court of Appeals has further held that the threshold for a First Amendment retaliation claim is very low and "a cause of action is supplied by all but truly *de minimus* violations."  *Id.* (citing *Suppan*, 203 F.3d at 234-35).

Here, Plaintiff alleges that Defendants retaliated against him by referring him to the

Pennsylvania State Police and Lackawanna County District Attorney for criminal investigation as a result of his request for a public hearing.  A reasonable factfinder could determine that such conduct is sufficient to deter a "person of ordinary firmness" from exercising his First Amendment right to petition the government.  The Court therefore finds that the alleged conduct may constitute retaliation within the meaning of the second element of the First Amendment retaliation test.  *See Thomas,* 463 F.3d at 296.

To establish the second element, Plaintiff must show that his protected conduct was a substantial factor in the alleged retaliation.  To do so, Plaintiff does not have to show "but-for" causation; rather, he must show only that "the exercise of [his] First Amendment rights played some substantial role in the relevant decision." *Suppan,* 203 F.3d at 236.

Defendants contest Plaintiff's ability to establish this element, but focus on the wrong conduct in their argument.  They assert that Plaintiff cannot show that his request for a hearing was a substantial factor in the decision to place him on paid suspension.  However, as Plaintiff counters, the allegedly retaliatory conduct was the referral of Plaintiff for criminal investigation, not the fact of his suspension.  As to the former, Plaintiff offers as evidence the letters indicating that his referral for investigation occurred two (2) days after he requested a hearing, (Pl.'s Br. in Opp'n, Exs. D, E.), suggesting causation may be inferred from the time proximity, s*ee Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (an "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action" can establish a causal link in a First Amendment retaliation claim).  In addition, he points to the deposition of Covington Township Supervisor William Willson, who testified that he believed Sergeant Klocko was "mad" that Plaintiff was fighting his suspension.  (Willson

22

Dep. 20:17-20; Doc. 28.)  Examining the record in the light most favorable to the non-moving party, the Court finds there is a question of material fact as to whether Plaintiff was referred for criminal investigation in retaliation for his requesting a public hearing regarding his suspension.

> ### C.      Same Action in Absence of Protected Conduct

After consideration of the first two elements of the retaliation test, the burden of persuasion shifts to the defendant, who "may defeat plaintiff's claim by demonstrating that the same action would have taken place even in the absence of the protected conduct."  *San Filippo*, 30 F.3d at 430-31 & n. 7.  Defendants' arguments on this point focus again on the wrong conduct, arguing that Plaintiff would have been suspended regardless of his request for a hearing.  They have not shown that Plaintiff would have been referred for investigation regardless of the request.  Summary judgment on Plaintiff's First Amendment claim would therefore be inappropriate.

> ## III.     Failure to Train

Finally, Plaintiff asserts claims against the Township for an alleged failure to train its employees and/or agents not to infringe an individual's constitutional rights.  Plaintiff's allegations can be separated into two failure to train claims.  First, he asserts that the Township failed to train its employees not to retaliate in violation of Plaintiff's exercise of First Amendment rights.  Second, he alleges a failure to train in connection with his asserted due process right to notice and opportunity to be heard prior to his suspension.  Defendant argues that Plaintiff cannot meet the stringent standards of culpability and causation as to either claim.

Municipal liability can be predicated on a failure to train.  In order to impose municipal liability, a plaintiff must identify a municipal "policy" or "custom" that caused the plaintiff's injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  "Where, as here, the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact."  *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999), *cert. denied*, 528 U.S. 1005 (1999).  As the U.S. Supreme Court has explained, only in circumstances exhibiting deliberate indifference "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).  "When a plaintiff alleges that a municipality has not directly inflicted an injury, but has caused an employee to do so, stringent standards of culpability and causation must be applied to ensure that the municipality in a § 1983 suit is not held liable solely for the conduct of its employee." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

A.      First Amendment Violation

The Court agrees with Defendants that Plaintiff fails to show a sufficient causal nexus on his failure to train claim for violation of his First Amendment rights.  The Third Circuit Court of Appeals has repeatedly stressed that establishing municipal responsibility on a § 1983 failure to train claim is a high and difficult burden.  *See, e.g., Reitz,* 125 F.3d at 145. A plaintiff must identify specific training the municipality has failed to provide that directly caused his injury and must demonstrate that this failure reflects deliberate indifference.  *Id.* Here, Plaintiff makes broad, conclusory assertions that the Township failed to provide

training to prevent retaliation against an employee exercising protected petitioning rights. In support of this position, he points to deposition testimony of two Township Supervisors, serving at the relevant time, in which each admits to receiving no such training.  (Lindner Dep. 17-18, Petrosky Dep. 33-34, Doc. 28.)  However, their testimony does no more than respond to equally conclusory questioning.[11]  The only specific training Plaintiff identifies as

---

[11]     The following interchange occurred between Plaintiff's counsel and Supervisor David Petrosky:

> Q: Now, has Covington Township provided you with any training that you could not retaliate against someone when they petition the Government for redress?
>
> ...
>
> A: No, they haven't, but I read and I've been in situations where I understand that from my previous employment.

(Petrosky Dep. 33:4-12.)

The following interchange occurred between Plaintiff's counsel and Supervisor Charles Lindner:

> Q: Has Covington Township ever provided you with any training telling you that you cannot retaliate against an employee who fights for their job back?
>
> A: Explain that a little better for me.  In other words –
>
> Q: Sure.
>
> A: – what you're say [sic] to me is have we been told you should not do that or we should do that?  Is that what you're trying to say?  No.
>
> Q: I want to know if you had any training –
>
> A: No.  Okay, no.
>
> Q:  – did they ever train you?  Did anyone ever tell you, you know,

lacking is "training" not to do precisely what he alleges happened to him, *i.e.* not to refer a person to the state police or district attorney just because he is "fighting for his job."  (Pl.'s Br. in Opp'n 20.)  Such a circular argument is insufficient to meet the stringent standard of causation required in a failure to train claim.  *See Woloszyn v. County of Lawrence*, 396 F.3d 314, 325 (3d Cir. 2005) (plaintiff did not identify specific training for purposes of failure to train claim where the training deficiencies identified were broad, general, and conclusory). The Court will therefore grant summary judgment on this claim.

### B.    Due Process Violation

In order to prevail on a failure to train claim, Plaintiff must show that a training deficiency resulted in his constitutional injury.  Because the Court determined above that Plaintiff does not establish a due process violation, his failure to train claim based on this alleged injury must also fail.  *See Viola v. Borough of Throop*, No. 06-cv-1930, 2008 U.S. Dist. LEXIS 59470, at *28-*29 (M.D. Pa. Aug. 5, 2008) (Munley, J.) (granting summary judgment on plaintiff's failure to train claim where he failed to show constitutional injury). Therefore, the Court will also grant summary judgment on this claim.

### CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion for summary judgment on Plaintiff's § 1983 claims.  (Doc. 22.)  The Court will grant

---

you shouldn't be turning people in to the State Police or the District Attorney's Office if they're just fighting for their job?

A: No.

(Linder Dep. 17:5-20.)

Defendants' motion with respect to Plaintiff's two claims for violation of his procedural due process rights, one asserting a property interest and the second asserting a liberty interest in reputation.  The Court will also grant the motion with respect to Plaintiff's two claims for Covington Township's failure to train, one based on the alleged violation of his First Amendment right to petition and the second based on the alleged violation of his due process rights.  The Court will deny the motion with respect to Plaintiff's First Amendment retaliation claim.

An appropriate Order follows.

March 6, 2009                                                  /s/ A. Richard Caputo

Date                                                                A. Richard Caputo
                                                                      United States District Judge

27

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WILLIAM A. MORGAN,

    Plaintiffs,

       v.

COVINGTON TOWNSHIP, et al.,

    Defendants.

NO. 3:07-cv-1972

(JUDGE CAPUTO)

**ORDER**

    **NOW**, this   6th   day of March, 2009, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment of Defendants Covington Township, Bernard Klocko, and Thomas Yerke (Doc. 22) is **GRANTED in part** and **DENIED in part** as follows:

(1)    Defendants' motion is **GRANTED** with respect to Plaintiff's procedural due process claims, brought pursuant to 42 U.S.C. § 1983.

(2)    Defendants' motion is **GRANTED** with respect to Plaintiff's claims for Covington Township's failure to train its employees and/or agents, brought pursuant to 42 U.S.C. § 1983.

(3)    Defendants' motion is **DENIED** with respect to Plaintiff's First Amendment retaliation claim, brought pursuant to 42 U.S.C. § 1983.

        /s/ A.  Richard Caputo

        A. Richard Caputo
        United States District Judge